UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT FRANKFORT

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CRIMINAL NO. 3:17-00012-KKC |
| **Plaintiff,** | |
| V. | **OPINION AND ORDER** |
| **JAMES F. SULLIVAN,** | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a motion for a new trial (DE 81) and a motion for judgment of acquittal (DE 80) filed by defendant James F. Sullivan.

Sullivan was charged with three counts of illegally giving cash payments to Timothy Longmeyer, who was a Deputy Attorney General of Kentucky and Secretary of the Kentucky Personnel Cabinet. The indictment charged that Sullivan gave Longmeyer the money in order to secure government contracts for entities and individuals who Sullivan represented as a consultant, in violation of 18 U.S.C. § 666(a)(2). Sullivan was also charged with one count of illegally conspiring with Longmeyer to make such payments.

After a jury trial, Sullivan was convicted of one count (Count 2) of illegally giving Longmeyer money to secure a government contract; he was acquitted on the remaining three counts.

I.  **Motion for new trial**

With his motion for a new trial, Sullivan argues that he is entitled to a new trial because transcripts of certain recorded conversations between him and Longmeyer were

in the jury deliberation room while the jury was deliberating even though the transcripts were not admitted into evidence. This does not require a new trial. "As long as the trial court instructs the jury that the tapes and not the transcripts are evidence it is not error to allow a jury to have transcripts in deliberations, even if the transcripts were not admitted into evidence." *United States v. Scarborough*, 43 F.3d 1021, 1024–25 (6th Cir. 1994) (citing *United States v. Puerta Restrepo*, 814 F.2d 1236, 1242 (7th Cir.1987)).

In this case, the Court instructed the jury that the tapes themselves were evidence, but the transcripts were not. It further instructed the jury that if they noticed any difference between what they heard on the tapes and what they read in the transcripts, they should rely on what they heard, not what they read. Finally, the Court instructed the jury to ignore the transcripts as to any parts of the recording they could not hear or understand. (DE 78, Jury Instructions, No. 23.) After learning the jurors possessed the transcripts during deliberations, the Court retrieved the transcripts from the jurors and reiterated these instructions.

In *United States v. Pennell*, 737 F.2d 521 (6th Cir.1984), the Sixth Circuit held that the district court did not err in denying the defendant's motion for a mistrial after an anonymous person contacted jurors by phone and urged them to convict. The court held that the defendant had not met his burden of proving "actual prejudice." *Id*. at 533, 534. Later, the Sixth Circuit applied that same standard in determining whether a new trial was required when a jury used a dictionary to define terms in the jury instructions. *United States v. Griffith*, 756 F.2d 1244, 1252 (6th Cir. 1985). The "actual prejudice" standard is also appropriate here, where the defendant moves for a new trial because the jurors had access to unadmitted transcripts during deliberations. *Scarborough*, 43 F.3d at 1025.

2

Sullivan has not demonstrated actual prejudice. The recordings themselves were admitted into evidence and Sullivan does not argue that the transcripts were inaccurate. Further, as discussed, the Court instructed the jurors that the transcripts were not evidence and that they should rely on the recordings themselves if they found any differences between the transcripts and recordings. "Use of transcripts not in evidence is permissible where the tape is in evidence, the defendant has not questioned the accuracy of the transcript, and the defendant has shown no prejudice." *Scarborough*, 43 F.3d at 1025.

In his reply brief, Sullivan concedes that *Scarborough* required a showing of "actual prejudice" where the jurors had access to transcripts not in evidence while deliberating. Nevertheless, Sullivan argues the Court should not employ that standard because it is "virtually impossible" to meet. Regardless of the difficulty of meeting this burden, the Court must follow Sixth Circuit precedent.

Sullivan also argues that the Court should not require a showing of "actual prejudice" because, in this case, the jurors had difficulty reaching a verdict. After deliberating several hours, the jury returned a note requesting more details on Counts 2 and 3. Then, at the end of the day, the jurors returned another note stating that they could not reach a unanimous decision, which prompted the Court to deliver an Allen charge. Sullivan cites no case law indicating that a showing of "actual prejudice" should not be employed in these circumstances.

In determining that Sullivan was not prejudiced by the jurors' access to the transcripts during deliberations, the Court has considered the jury's difficulty in reaching

a verdict in this case. Nevertheless, the Court cannot find prejudice sufficient to warrant a new trial. The jury heard the actual recordings, which were in evidence. There is no argument that the transcripts deviated from the actual recordings. Further, the jurors were instructed to rely on the recordings, not the transcripts.

The interest of justice does not require a new trial under these circumstances. *See* Fed. R. Crim. P. 33(a).

## II. Motion for Judgment of Acquittal

Sullivan has also moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. A motion under Rule 29 challenges the sufficiency of the evidence. Fed. R. Crim. P. 29(a). For this motion, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "All reasonable inferences and resolutions of credibility are made in the jury's favor." *United States v. Tragas*, 727 F.3d 610, 617 (6th Cir. 2013) (quoting *United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012)). "A convicted defendant bears 'a very heavy burden' to show that the government's evidence was insufficient." *Id.* (quoting *United States v. Kernell*, 667 F.3d 746, 756 (6th Cir. 2012)).

Again, Sullivan was convicted of one count of bribery concerning a program receiving federal funds in violation of 18 U.S.C. § 666(a)(2). That statute prohibits, under certain circumstances, giving anything of value to any person with the intent to influence or reward "an agent of an organization or of a State, local, or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions

of such organization, government or agency involving anything of value of $5,000 or more." 18 U.S.C. § 666(a)(2). The "certain circumstances" that the statute requires are that the organization, government or agency that the agent represents receives in any one-year period benefits of more than $10,000 under a Federal program. 18 U.S.C. § 666(b).

In this case, the government sought to prove that Longmeyer was an agent of the government of the Commonwealth of Kentucky. (DE 64, Government's Proposed Jury Instructions, Counts 2-4.) Thus, it was required to prove that the Kentucky state government received benefits of more than $10,000 in the same one-year period that Sullivan attempted to bribe Longmeyer. At trial, the parties stipulated that the Commonwealth of Kentucky received more than $10,000 in federal funding from July 1, 2015 to June 30, 2016. (DE 66, Stipulations.) Sullivan concedes that he delivered the $1,000 cash payment to Longmeyer on March 22, 2016. (DE 80-1, Mem. at 2.)

In his motion, Sullivan argues that the government failed to prove that the bribe alleged in Count 2 had any connection to the program receiving federal funds. The government did not have to establish that. "18 U.S.C. § 666 does not require a nexus between the alleged bribes and the federal funding received by [the recipient agency]." *United States v. Suarez*, 263 F.3d 468, 490 (6th Cir. 2001) (quoting *United States v. Dakota*, 197 F.3d 821, 826 (6th Cir. 1999)).

Having alleged that Longmeyer was a state agent at the time that Sullivan attempted to bribe him, pursuant to the statute's plain language, the government had to prove that the state itself received the requisite federal funds, not any particular agency or program. *See United States v. Pretty*, 98 F.3d 1213, 1219 (10th Cir. 1996) ("If Whitehead was an agent of the state, rather than only of the Treasurer, then § 666 applies to her even

if the Treasurer did not benefit from the federal funds, because the state itself received and benefited from more than $10,000 in federal funds.")

Of course, the government did have to prove that Longmeyer was an agent of the state. The statute defines an "agent" as "a person authorized to act on behalf of. . . a government and, in the case of an organization or government, includes a servant or employee. . . ." 18 U.S.C.A. § 666(d)(1). The evidence established that Longmeyer was deputy Attorney General for Kentucky at the time of the events alleged in Count 2. Pursuant to state statute, the deputy attorney general has the "full power . . . to perform such duties as may be performed by the Attorney General." Ky. Rev. Stat. Ann. §15.100(2). Longmeyer testified that the Attorney General is authorized to enter into litigation on behalf of the state. (DE 98, Tr. at 53.) He also testified that the Attorney General has authority to hire outside lawyers to work on the state's behalf. (DE 98, Tr. at 42, 157-58.)

Deputy attorney general John Michael Brown testified that the deputy attorney general acts as the attorney general when the attorney general is absent. (DE 94, Tr. at 2.) He testified that the attorney general is the chief law enforcement officer and chief legal officer for the state. (DE 94, Tr. at 4.) This is sufficient evidence from which a juror could find that Longmeyer, as Kentucky's deputy attorney general, was authorized to act on behalf of the Commonwealth of Kentucky.

Finally, Sullivan argues that the government failed to prove that the bribe alleged in Count 2 was made "in connection with any business, transactions, or series of transactions. . . involving anything of value of $5,000 or more." 18 U.S.C. §666(a)(2). The government presented evidence, however, that Sullivan paid Longmeyer $1,000 for

6

his assistance in awarding contingency-fee contracts to law firms – which were Sullivan's clients – to prosecute certain litigation on the state's behalf. (DE 98, Tr. at 42-46, 50-59; Govt. Ex. 1.)

The government also submitted the recording of a March 16, 2016 conversation in which Sullivan and Longmeyer discussed the payments that could be made to law firms pursuant to contingency-fee contracts with the state. In the recording, Sullivan explained to Longmeyer that the South Carolina state government had entered into a contingency-fee contract awarding a law firm 18 to 20 percent of the amounts recovered in certain litigation involving pharmaceutical companies. (DE 98, Tr. at 55-57.) At trial, Longmeyer explained that, in the conversations, Sullivan was asking Longmeyer to obtain a similar contract for Sullivan's law-firm clients. (DE 98, Tr. at 55-57.) In the recording, Longmeyer explains that the contingency-fee contracts with the Commonwealth of Kentucky would be for just a slightly lower percentage but would still be of substantial value on a potential $300 million verdict or settlement. (Govt. Ex. 1; DE 98, Tr. at 57-58.)

This is sufficient evidence from which a rational juror could find that the bribe alleged in Count 2 involved state contracts worth at least $5,000 to the law firms that Sullivan represented.

Aside from his Rule 29 challenge to his conviction, Sullivan argues that §666(a)(2) is void for vagueness because it does not require a nexus between the alleged bribe and a risk to federal money. "The void-for-vagueness doctrine requires that a penal statute define a criminal offense 'with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary

7

and discriminatory enforcement.'" *511 Detroit St., Inc. v. Kelley*, 807 F.2d 1293, 1295 (6th Cir. 1986) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). A person of ordinary intelligence would understand that § 666(a)(2) prohibits bribing a state agent with regard to state contracts worth more than $5,000. *See United States v. Ryans*, 709 F. App'x 611, 619 (11th Cir. 2017).

### III. Conclusion

For all these reasons, the Court hereby ORDERS that Sullivan's motion for a new trial (DE 81) and motion for judgment of acquittal (DE 80) are DENIED.

Dated October 10, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY